IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CECIL DAWSON,

        Plaintiff,

  vs.                                                             No. CIV 02-113 LFG/WWD

P. IELACQUA, CITY OF ALBUQUERQUE,
E & a KAP, INC., d/b/a/ TOWN & COUNTRY
TOWING, and DOES 1-6,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS CITY OF ALBUQUERQUE AND P. IELACQUA'S MOTION TO DISMISS FEDERAL AND STATE RICO CLAIMS

THIS MATTER comes before the Court on the Motion to Dismiss Count XXI (Federal Civil RICO) and Count XXII (State Civil RICO) [Doc. 25], filed by Defendants City of Albuquerque ("City") and Albuquerque Airport Police Officer Paul Ielacqua ("Ielacqua"). A response and reply were filed. No oral argument is necessary. For the reasons given below, the motion is granted.

### Factual and Procedural History

Plaintiff Cecil Dawson ("Dawson"), proceeding *pro se*, filed suit against four named defendants[1] and six John Does, alleging 22 causes of action and seeking compensatory and punitive damages, as well as injunctive relief. Dawson's claims arise from an incident that took place on or

---

[1] Defendant B. Chavez, Chief Clerk of the New Mexico Metropolitan Court, was dismissed from this action [Docs. 50 and 55]. However, the Court withdrew the order of dismissal, so as to allow Dawson additional time to present a memorandum of points and authorities demonstrating that the dismissal was improper [Doc. 61].

about September 25, 2001. Dawson claims that Defendant Ielacqua, acting under "an official display of authority" as an officer of the City of Albuquerque Airport Police, stopped him and issued a traffic citation or citations, and that after Dawson drove away from the scene Ielacqua and other police officers chased him down and dragged him out of his vehicle, threw him to the ground, and held him down with their knees in his back. He alleges that their actions caused him to have a heart attack which led to hospitalization and quadruple bypass surgery and that no criminal charges, other than the traffic citations, were filed against him as a result of this incident. Dawson further claims that the officers, along with Defendant Kap, Inc. d/b/a Town & Country Towing ("Town & Country") forcibly and unlawfully seized his vehicle in order to give possession of the vehicle to Town & Country. He says he was never given a hearing regarding the vehicle seizure and was told he could recover the vehicle only by making an unconditional payment to the towing company.

In connection with his RICO claims, Dawson alleges that Town & Country paid approximately $3,000 to the City in order to be included on the City's list of companies who perform vehicle towing services when called upon by City employees to do so, and that the City demands a percentage of any such towing fees collected by the towing companies on the list. Dawson also alleges that Defendant Town & Country uses the proceeds from its business with the City to maintain and operate its "enterprise," and that it is the routine practice of the Defendants to take vehicles from people in the Albuquerque area "through threats of force, threats of armed robbery or actual armed robbery in order to extort monies from them . . . ." (Complaint [Doc. 1], ¶¶ 10-32, 41-42, 51, 55, 91, 93, 96-102).

Defendants Ielacqua and the City have a different version of the events forming the basis of Dawson's lawsuit. They state in their Answer that shortly after midnight on September 25, 2001,

Defendant Ielacqua was on duty and in uniform as an officer with the Albuquerque Aviation Police Department, when he stopped Plaintiff Dawson for driving his vehicle without brake lights. They allege that, when questioned by Ielacqua, Dawson acknowledged that he did not have a driver's license or liability insurance; Ielacqua therefore called his sergeant, who authorized a towing company to tow Dawson's vehicle.

Defendants further state that when the tow truck operator arrived, Dawson asked for and received permission to retrieve some personal items from his vehicle, whereupon Dawson got into his vehicle and attempted to drive away, prompting Ielacqua to reach into the vehicle to try to turn off the ignition. Defendants assert that Dawson continued to drive away, dragging Officer Ielacqua along with the vehicle for several yards, that the other officers chased the vehicle and forced Dawson to stop and that they then took him out of the vehicle and handcuffed him. They state further that at this point, Dawson told officers he had a heart condition, and they therefore called the Fire Department, which arrived on the scene and transported Dawson to the hospital.

Defendants state that Dawson was convicted of driving without a license, first in Metropolitan Court and again upon trial *de novo* in District Court. They also allege, upon information and belief, that Dawson is being prosecuted for aggravated assault on a police officer, based on this incident. Defendants deny that there is anything improper or illegal in the manner in which the City administers its contracts with various towing companies. (Answer of Defendants Paul Ielacqua and City of Albuquerque [Doc. 12], at ¶¶ 2, 8, 29-30).

Among Dawson's 22 causes of action are two claims under federal and state RICO statutes. Count XXI is based on the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961 *et seq.* Count XXII is based on a similar state statute, the New Mexico Racketeering

Act, N.M.S.A. § 30-42-1 *et seq.*

Defendants Ielacqua and the City filed several motions to dismiss, including this one seeking dismissal of the two RICO claims. Defendants argue that Dawson's allegations fail to state all elements of a cause of action under these statutes. [Docs. 26, 41]. Dawson counters that the motion is untimely, and that his complaint states a claim for relief. [Doc. 37].

## Discussion

A. <u>Timeliness of motion and standard for determining motion to dismiss</u>.

Dawson argues that this motion to dismiss is untimely because it was filed well after Defendants submitted their Answer. The Court rejects this argument. Under Fed. R. Civ. P. 12(b)(6), a motion to dismiss for failure to state a claim "shall be made before pleading if a further pleading is permitted." However, Defendants correctly point out that a motion to dismiss, even if filed after their Answer, may nevertheless be considered by the Court as if it were a motion for judgment on the pleadings:

> Normally a motion to dismiss for failure to state a claim upon which relief can be granted should be made prior to filing the answer or in the answer itself. Fed.R.Civ.P. 12(b)(6). If the defendant makes the motion after filing the answer, the motion should generally be treated as a motion for judgment on the pleadings. Fed.R.Civ.P. 12(c), (h)(2) . . . We use the same standard when evaluating 12(b)(6) and 12(c) motions. See <u>Atlantic Richfield Co. v. Farm Credit Bank of Wichita</u>, 226 F.3d 1138, 1160 (10th Cir.2000) ("A motion for judgment on the pleading[s] under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)."). Therefore, in this case, our decision would be the same whether considered as a 12(b)(6) motion or a 12(c) motion.

<u>Jacobsen v. Deseret Book Co.</u>, 287 F.3d 936, 941 n.2 (10th Cir. 2002).

As the Court may treat this motion as one filed under Rule 12(c), and as the standards under 12(b)(b) and 12(c) are the same, the Court will proceed to consider the merits of the motion. Under

4

either rule, the Court will not dismiss the claim unless it is apparent that the plaintiff cannot prove facts entitling him to relief. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991). In addition, a *pro se* claimant's pleadings are to be viewed liberally. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 596 (1972).

However, even under a liberal view of Dawson's complaint, his RICO claims must be dismissed, because he fails to allege facts sufficient to support his claim of "racketeering activity," and because the City of Albuquerque is not a proper defendant for purposes of the RICO claims.

### B. Federal RICO Claim

The federal RICO statute, 18 U.S.C. §§ 1961 *et seq.*, was enacted as Title IX of the Organized Crime Control Act of 1970. This Act was intended to provide a response to the perceived threat posed by organized crime, and the focus of the RICO portion of the Act was to deal with the problem of infiltration or management of legitimate businesses by organized crime, including "racketeering activity" and investment of proceeds of racketeering activity in legitimate organizations.

One of RICO's tools is the provision of a private civil remedy, authorizing those persons who have been damaged in their property or business to bring treble damage lawsuits against persons committing acts outlawed by RICO. David B. Smith & Terrance G. Reed, Civil RICO ¶ 1.01 (2001) (hereafter cited as "Civil RICO").

> RICO takes aim at 'racketeering activity,' which it defines as any act 'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions, including mail and wire fraud, and any 'offense' involving bankruptcy and securities fraud or drug-related activities that is

5

'punishable' under federal law. § 1961(1).

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 481-83, 105 S. Ct. 3275, 3277-78 (1985). The statute outlaws the following activities:

> the use of income derived from a 'pattern of racketeering activity' to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce [§ 1962(a)]; the acquisition or maintenance of any interest in an enterprise 'through' a pattern of racketeering activity [§ 1962(b)]; conducting or participating in the conduct of an enterprise through a pattern of racketeering activity [§ 1962(c)]; and conspiring to violate any of these provisions [§ 1962(d)].

These sections are enforceable in a private civil action under 18 U.S.C. § 1964. RICO sets forth statutory definitions of the various elements of a claim, including the terms "enterprise," "pattern" and "racketeering activity," the last of which, as noted above, is defined in terms of certain predicate offenses chargeable under state or federal law. 18 U.S.C. § 1961. These definitions shed some light on the uses to which RICO was intended, but they do not answer all of the questions that have arisen under this complex statute. "One might naively suppose that those elements that are defined by the statute itself would present relatively few problems of statutory interpretation. However, that is not the case," write the authors of Civil RICO, ¶ 2.01, in a classic case of understatement. Indeed,

> It is a rare civil RICO case that does not raise a number of difficult questions the terms of the statute do little to answer. This often leads, not surprisingly, to tortuous, if not tortured, analysis and inelegant, if not astonishing, results. All of this moves the Court to observe, *obiter*, that reasonable persons might well doubt whether civil RICO was adequately considered before passage and whether it is playing a socially useful role in the administration of civil justice, given the substantial time and resources devoted to solving its puzzles.

Flinders v. Datasec Corp., 742 F. Supp. 929, 936 n.12 (E.D. Va. 1990).

It is clear that the scope and reach of RICO's civil remedy has expanded far beyond its original focus as a tool in the fight against organized crime. "[I]n its private civil version, RICO is evolving into something quite different from the original conception of its enactors." Sedima, 473 U.S. at 500. "From the vantage afforded by the mid-1990s, it is evident that even civil RICO's 1970 congressional opponents underestimated the private remedy's expansive reach." Douglas E. Abrams, "Crime Legislation and the Public Interest: Lessons From Civil RICO," 50 S.M.U.L.Rev.53 (Sept.-Oct. 1996). However, that reach is not without limits, and this Court finds that Dawson's allegations attempt to stretch the statutory language beyond even its most expansive interpretation.

Dawson does not state clearly which subsection of § 1962 he relies on in his federal RICO claim. The Court finds, however, that Dawson fails to state claims either under subsection (a) or (b), and that there is no need to consider subsection (d), relating to conspiracy, unless the Court first finds Plaintiff's allegations sufficient to state a claim under one of other subsections. As discussed below, the Court finds none of these claims sufficient to state a cause of action.

1. Subsection (a).

Dawson invokes subsection (a) in his allegation that Defendant Town & Country "use[s] the proceeds from the above activities to maintain and operate their enterprise," and that "the above described extortion scheme directly or indirectly affects interstate commerce." (Complaint, ¶¶ 100, 103). These allegations appear to be formulated to fit within § 1962(a), which provides:

> It shall be unlawful for any person who has received any income derived . . . from a pattern of racketeering activity . . . to use . . . any part of such income, or the proceeds of such income, in . . . operation of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

To establish a claim under any of the RICO subsections, a plaintiff must allege standing, that

7

is, he must assert that he was injured in his business or property as a result of the RICO violation. In the context of § 1962(a), this means that Dawson must allege injury as a result of the Defendants' investment of the racketeering income, not from the predicate acts of racketeering themselves. Grider v. Texas Oil & Gas Corp., 868 F.2d 1147, 1149 (10th Cir. 1989) ("a plaintiff seeking civil damages for a violation of section 1962(a) must plead facts tending to show that he was injured by the use or investment of racketeering income. Injury from the racketeering acts themselves is not sufficient ..."). Here, however, the facts as stated in Dawson's complaint set forth an allegation he was injured in his property by the asserted racketeering acts themselves, and not by any investment of racketeering proceeds. He therefore fails to state a claim under subsection (a).

2. Subsection (b).

Nor does Dawson state a claim under subsection (b); indeed, he does not appear to argue that he intended to state such a claim. This subsection provides that it shall be unlawful "for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

As with subsection (a), Dawson has not made a sufficient allegation of standing to support a cause of action under this subsection.

> To state a claim under § 1962(b), plaintiff must allege an injury resulting from the acquisition or control of an enterprise through a pattern of racketeering activity. Section 1962(b) requires a showing of a relationship or nexus between the pattern of racketeering activity and the interest or control obtained. Official has failed to allege any connection between the defendants' racketeering activity and their interest in the criminal enterprise. Official's complaint suggests that Kable is largely a legitimate business that engaged in fraudulent business practices; it never asserts that the defendants' criminal
8

> conduct enabled them to obtain an interest in or control of any enterprise. Accordingly, Official's § 1962(b) claim is dismissed. [Citations and internal punctuation omitted].

Official Publications, Inc. v. Kable News Co., 775 F. Supp. 631, 635 (S.D.N.Y. 1991).

In the present case, Dawson does not accuse any Defendant of attempting to "acquire an interest" in the alleged enterprise, or to control it, through the use of racketeering activity; rather, Dawson's allegation is that the Defendants use the enterprise to commit the racketeering activity itself. This is simply insufficient to state an actionable claim.

### 3. Subsection (c).

Subsections (a) and (b) being inapplicable, the Court therefore focuses on Dawson's claims under § 1962(c). That subsection provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To state a claim under subsection (c), a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Sedima, 473 U.S. at 496; Plains Resources, Inc. v. Gable, 782 F.2d 883, 887 (10th Cir. 1986); Condict v. Condict, 826 F.2d 923, 927 (10th Cir. 1987). In addition, Dawson must allege that he has standing to bring this claim, in the sense that he was injured in his property or business by the RICO violations alleged. Sedima, 473 U.S. at 496; Robbins v. Wilkie, — F.3d —, 2002 WL 1923832, at *2 (10th Cir., Aug. 21, 2002). And, further, he must show that the enterprise and the person are distinct.

The Court finds that Dawson has not alleged an enterprise distinct from the individual defendants, as required by Tenth Circuit case law and, in addition, the facts set forth by Dawson do

not establish the existence of racketeering activity. The dismissal of a case under Fed. R. Civ. P. 12(c) results in a judgment in favor of the dismissed party, Republic Steel Corp. v. Pennsylvania Eng'g Corp., 785 F.2d 174, 178 (7th Cir. 1986), while a dismissal under Fed. R. Civ. P. 12(b)(6) is generally without prejudice, an exception occurring when allowing an amendment would be futile. Chavez v. City of Santa Fe Housing Authority, 606 F.2d 282, 283 (10th Cir. 1979):

> Although no order formally dismissing plaintiffs' action was entered, under the circumstances of this case that was not required. The trial court dismissed the complaint on the ground that plaintiffs had no cognizable property interest that would engage due process protections. It is clear that plaintiffs could not have amended their complaint to assert a due process claim the court would have found acceptable.

Because any amendment to Dawson's complaint would be futile, under the facts as he alleges them to be, the motion to dismiss will be granted, and these claims will be dismissed with prejudice.[2]

### (a) The defendant "person" must be distinct from the "enterprise"

An "enterprise" is defined in RICO as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Dawson states in his complaint that the enterprise consists of Defendants Ielacqua, Does 1-3 [the officers at the scene of his arrest], Town & Country, and the City, "acting separately or in concert." (Complaint, ¶ 88).

As noted above, section 1962(c) provides that, "It shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."

---

[2]Because the Court finds that Dawson cannot state a RICO claim under the facts of this case, amendment of the complaint will not be allowed, and Counts XXI and XXII will be dismissed as against all Defendants herein, whether or not they joined in this motion.

The Tenth Circuit sides with the majority of circuits which hold that the defendant "person" under this subsection must be an entity distinct from the alleged "enterprise." Brannon v. Boatmen's First Nat'l Bank, 153 F.3d 1144, 1146 (10th Cir. 1998); Bd. Of County Comm'rs v. Liberty Group, 965 F.2d 879, 885 & n.4 (10th Cir. 1992). The Tenth Circuit further holds that this "distinctness principle" is violated when the enterprise specified in the complaint "is simply the group of individual defendants accused of engaging in the racketeering." Switzer v. Coan, 261 F.3d 985, 992 (10th Cir. 2001). Such is the case here.

Because Dawson asserts that the "enterprise" specified in the complaint is simply the group of corporate and individual "persons" accused of engaging in the racketeering, his pleading violates the distinctness principle followed by the Tenth Circuit in Brannon, Liberty Group, and Switzer, and noted with approval by the Supreme Court in Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163, 121 S. Ct. 2087, 2091 (2001) ("liability depends on showing that the defendants conducted or participated in the conduct of the *enterprise*'s affairs, not just their *own* affairs") (internal quotation marks omitted). The RICO counts could be dismissed on this basis alone, but a more serious deficiency of Dawson's pleadings arises from his allegations of "racketeering activity," as discussed below.

### (b) Racketeering activity

It is true, as noted above, that RICO is to be given a liberal interpretation. S*ee*, Section 904(a), Pub. L. 91-452, 84 Stat. 947, 18 U.S.C. 1961 note: "The provisions of this title shall be liberally construed to effectuate its remedial purposes"; and Sedima, 473 U.S. at 497: "RICO is to be read broadly."

However, it strains credulity and even the broadest construction of the statute to assert that

RICO was intended to reach the acts of a police officer issuing a legitimate traffic citation and lawfully ordering that a vehicle be towed on the arrest of the driver or because its driver failed to produce a driver's license, or the acts of a municipality in its lawful establishment of a program for designating authorized wreckers to provide towing services at the request of city employees. Dawson's vehemence notwithstanding, these acts simply do not come within the scope of coverage of a statute originally aimed at organized crime. Dawson had an established administrative remedy under the City Code (Albuquerque City Ordinances, § 7-7-17), which he could have pursued if he thought his vehicle had been unlawfully towed, and he also has appropriate tort remedies which could be pursued; he does not, however, have a remedy under the RICO statutes.

As noted above, Dawson must establish as an element of his RICO claim that Defendants operated their enterprise through a pattern of "racketeering activity," defined in terms of predicate offenses set forth in 18 U.S.C. § 1961(1).

> RICO specifically defines "racketeering activity" as any act that violates specified state and federal crimes . . . The various acts of racketeering described in the statute are often referred to as "predicate acts" because they form the basis for liability under RICO . . . However, a person does not have to be formally convicted of any predicate act before liability under 18 U.S.C. 1962(c) may attach.

BancOklahoma Mortgage Corp. v. Capital Title Co., 194 F.3d 1089, 1102 (10th Cir. 1999).

The predicate acts upon which Dawson relies in the present case are robbery, extortion, and use of the mails to distribute the proceeds of illegal activity.

### (1) Robbery and extortion as predicate acts

Dawson alleges in his complaint that Defendants Ielacqua and Does 1-3 were carrying guns at the time of the arrest and used physical force and threats of armed force to obtain possession of

his vehicle; that they physically injured Dawson in the process of taking the vehicle from him; that the primary reason for the forcible seizure of the vehicle was to take away all right and control of his vehicle and summarily give them to Town & Country; and that he was forced to make an unconditional payment to Town & Country if he wanted to recover the vehicle.

Dawson claims that these threats and acts constitute robbery and extortion chargeable under state law, and that in addition these acts violated a federal criminal provision, 18 U.S.C. § 1951, which outlaws interference with commerce "by robbery or extortion."

"Robbery" is defined in New Mexico law as "the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence." N.M.S.A. § 30-16-2.

"Extortion" is defined in state law as "the communication or transmission of any threat to another by any means whatsoever with intent thereby to wrongfully obtain anything of value or to wrongfully compel the person threatened to do or refrain from doing any act against his will." N.M.S.A. § 30-16-9.

The federal statute cited by Dawson, 18 U.S.C. § 1951, "Interference with commerce by threats or violence," provides as follows:

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.
>
> (b) As used in this section–
>
> (1) The term "robbery" means the unlawful taking or obtaining of

> personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.
> (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

Each of these sections contains, as an essential element, that the taking be "unlawful" or that the threat be made with intent to "wrongfully" obtain something of value from the victim. The state statute on robbery does not use the words "wrongful" or "unlawful"; rather, it includes the word "theft," which requires criminal intent. The intent necessary for robbery includes the general criminal intent of conscious wrongdoing, as well as the specific criminal intent to steal. State v. Puga, 85 N.M. 204, 510 P.2d 1075 (Ct. App. 1973).

Dawson acknowledges in his complaint that traffic citations were issued against him on the night of the incident in question, although he adds that no other criminal charges were filed against him. (Complaint, ¶ 32).[3] He states that he signed the citations, which "alleged violations of New Mexico state traffic laws." (Complaint, ¶ 14).

Dawson argues that Defendants cannot rely on the fact that he was driving without a license and insurance, because the Court cannot look beyond the allegations of his complaint in deciding a motion to dismiss, and he does not allege in his complaint that he was driving without a license. Nowhere, however, does he deny Defendants' allegation that he was cited and convicted of driving without a license, and this Court takes judicial notice of the public record, which establishes that

---

[3]The Court notes that Defendant contests Dawson's assertion that no other charges have been filed against him. In ¶ 8 of their Answer, the City and Ielacqua allege, upon information and belief, that the District Attorney's office is prosecuting Dawson for aggravated assault upon a police officer.

14

Dawson was convicted of driving without a license in Bernalillo County Metropolitan Court on November 28, 2001, and in state District Court upon trial *de novo* on February 5, 2002 (Case number TR 63473-01, citation number 022000028875243, issued by Officer Ielacqua of the City of Albuquerque Airport Police).

All persons driving vehicles upon New Mexico roadways must possess a valid driver's license. N.M.S.A. § 66-5-2. The actions of police officers in issuing a citation for violation of this section, and subsequently having the vehicle towed away because the driver was not legally authorized to operate it, do not constitute armed robbery. Similarly, all vehicles must be insured, N.M.S.A. § 66-5-205, and an uninsured vehicle may properly be towed. The fact that the City maintains a rotation list of wreckers whom it uses to tow vehicles under such circumstances (*see*, Albuquerque City Ordinances, Article 7) and that a person whose vehicle is towed must pay a towing fee to retrieve his car, does not constitute extortion, defined under state law as the transmission of a threat with intent to wrongfully obtain a thing of value.

Dawson has administrative and legal remedies for retrieval of his vehicle and for injury to his person and property, if he can show that it was wrongfully seized or that officers used excessive force in arresting him. However, it strains even the broadest construction of RICO to assert that the statute was intended to reach the acts of a police officer issuing a legitimate traffic citation and lawfully ordering that a vehicle be seized because its driver failed to produce a driver's license or proof of insurance. It further strains credulity to conclude that the acts of a municipality in its lawful establishment of a program for designating authorized wreckers to provide towing services at the request of city employees would fall within the coverage of a statute that originally sought to stop racketeering and organized crime, however broadly that statute was later interpreted.

(2) <u>"Use of mails to distribute proceeds" as predicate acts</u>

In addition to claiming robbery and extortion as the requisite predicate acts under the RICO statute, Dawson also alleges in his complaint that Town & Country violated 18 U.S.C. § 1952, by using the mails to send to the City a percentage of the towing fees it collects. (Complaint, ¶ 99). Violation of § 1952 is one of the predicate acts listed in the definition of "racketeering activity." 18 U.S.C. § 1961(1).

Section 1952 makes it a crime to use the mail with intent to "distribute the proceeds of any unlawful activity." The phrase "unlawful activity" is defined to include business enterprises involving *inter alia* gambling, liquor on which excise taxes have not been paid, narcotics or controlled substances, prostitution, extortion, bribery, or arson. 18 U.S.C. § 1952(a-b). As noted above, Defendants' activities do not amount to extortion. Nor do any of the other activities set forth in § 1952 apply under the circumstances of this case.

The facts alleged by Dawson in his complaint do not state a claim for commission of any "unlawful activity" on the part of the Defendants, and § 1952 cannot therefore serve as a predicate offense in support of Dawson's claim of "racketeering activity."

C. <u>State RICO Claim</u>

Dawson's claim under the New Mexico Racketeering Act fails for the same reason that his federal RICO claim is insufficient. *See*, <u>Plains Resources</u>, at 887-88, treating a claim under the Colorado Organized Crime Control Act, which was "modeled after" RICO, similarly to its treatment of the federal RICO claim.

The purpose of the Racketeering Act, N.M.S.A. § 30-41-1 *et seq.*, is to "eliminate the infiltration and illegal acquisition of legitimate economic enterprise by racketeering practices and the

16

use of legal and illegal enterprises to further criminal activities." N.M.S.A. § 30-42-2. In a manner similar to RICO, the New Mexico statute defines "racketeering" as the commission of certain specified predicate offenses. Dawson alleges that Defendants in this case committed the predicate acts of robbery, larceny, extortion, and receiving stolen property. He further alleges that Defendants violated section 30-42-4, which is closely patterned after 18 U.S.C. § 1962, and that he has a civil remedy of treble damages for this violation under section 30-42-6, which is patterned after 18 U.S.C. § 1964.

As was true of his federal RICO claim, Dawson has failed to allege facts in his complaint sufficient to indicate that Defendants are chargeable with any of the predicate acts alleged. The actions of police officers in issuing valid traffic citations and arranging for the towing of an unlawfully operated vehicle, and the actions of the City and the towing company in entering into arrangements whereby the company would be placed on a list of wreckers who provide towing service for the City at the request of its police officers, are not chargeable or indictable as robbery, larceny, extortion, or receiving stolen property, because Dawson cannot show the requisite criminal intent. The Court will therefore dismiss Count XXII.

### D. City of Albuquerque is not a proper defendant in a RICO action

Finally, the Court notes that a municipality is not a proper defendant in an action under RICO, "because government entities are incapable of forming a malicious intent" for the predicate acts, Lancaster Community Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 404-05 (9th Cir. 1991); County of Oakland by Kuhn v. City of Detroit, 784 F. Supp. 1275, 1283 (E.D. Mich. 1992); and because RICO's mandatory award of treble damages are punitive in nature, and municipalities are exempt from punitive damages. Genty v. RTC, 937 F.2d 899, 910-14 (3d Cir. 1991); Newport v.

17

Fact Concerts, Inc., 453 U.S. 247, 260, 101 S. Ct. 2748, 2756 (1981).

The Court finds these authorities persuasive and will dismiss the RICO counts against the City of Albuquerque on this ground as well.

**Conclusion**

The Court acknowledges that RICO has been subject to a very broad interpretation, and there is no question that it is applicable beyond its original focus on organized crime. Plains Resources, at 885 (plaintiff need not allege and prove that the conduct described as "racketeering activity" is connected to organized criminal conduct). However, even at its broadest, RICO does not encompass the activities described in Plaintiff's complaint. Dawson was violating traffic laws when he was stopped by Defendant Ielacqua, and the officer lawfully issued him a citation. His vehicle was lawfully towed. His conviction for driving without a license was affirmed by the state district court. The City lawfully, by ordinance, established a method for providing towing services to be performed by private companies.

If Dawson wishes to protest the manner in which his vehicle was towed, or the amount of force that was used when he was arrested, the law provides other remedies for these claims. But the facts stated by Dawson do not adequately allege a pattern of racketeering activity by Defendants, and this unfortunate series of events cannot be squeezed into claims under federal and state Racketeer Influenced and Corrupt Organizations Acts.

**Order**

IT IS THEREFORE ORDERED that Defendants Paul Ielacqua and City of Albuquerque's Motion to Dismiss Count XXI (Federal Civil RICO) and Count XXII (State Civil RICO) [Doc. 25] is granted, and those claims are dismissed with prejudice as to all Defendants herein.

_____
Lorenzo F. Garcia
United States Magistrate Judge